■    In the Matter of the Claim of KATHARINE R. FICHTNER, Respondent, against BLOOMINGDALE BROTHERS et al., Appellants, and M. GOLDFARB et al., Respondents. WORKMEN'S COMPENSATION BOARD, Respondent.— Appeal by an employer and its insurance carrier from a decision and award by the Work-

■

men's Compensation Board for a permanent partial disability, the sole issue presented arising upon appellants' contention that the board's apportionment of liability, five eighths as to them and three eights as against a prior employer and carrier, was arbitrary and unsupported by any substantial medical evidence. On May 16, 1940, in the prior employment, claimant sustained compensable injuries. She testified that although she had some pain and discomfort she lost no time from work as a result of the accident. Her case was closed on May 27, 1942 with a lump sum settlement of $200. On October 7, 1950, while working for the appellant employer, claimant fell and was injured but did not stop work until October 9. She was hospitalized on October 10 and operations which followed revealed avascular necrosis of the head of the left femur and an avulsed degenerative ligamentum teres. Following the first operation (a vitallium mold arthroplasty), the vitallium mold was dislocated when claimant moved without support and, after a closed reduction was attempted without success, an arthrodesis was performed. There was substantial medical evidence supportive of the board's finding that the necrosis was a result of the first accident and was aggravated by the second and that the latter caused the avulsion of the ligament. As to causation and aggravation of the necrosis at least, there now seems to be no great dispute. An impartial specialist believed that the first accident "caused the greater amount of damage" but later in his testimony, after noting that claimant worked until the time of the second accident, he said: "Evidently she was able to get along with what she had" and "There was no need at that time for an operation". He said, further, that the second trauma made the operation necessary in that the tear of the ligament resulted in insufficiency of the already diminished blood supply. Asked if eventually, without the 1950 trauma, claimant would have required the operation, he said that "some of them do and some don't" but that "the majority would go on to require some operative intervention". After the second accident and the operations which followed it, claimant's disability was a permanent loss of use of seven eighths of the left leg. Upon consideration of all the medical evidence, another trier of the facts might well have found that the first accident contributed to the ultimate disability more greatly than did the second, but we are unable to say that the evidence upon which the board reached a contrary conclusion was not substantial. Appellants urge error, also, in a ruling on evidence. The operating surgeon was asked "what proportion of this schedule" was due to each accident and an objection was sustained by the referee with the statement, "In view of the doctor's previous testimony, this question is objectionable." The doctor had, indeed, repeatedly declined thus to apportion causation, stating that he could not honestly do so. Decision and award unanimously affirmed, with costs to respondents Goldfarb and State Insurance Fund. Present — Foster, P. J., Bergan, Coon, Halpern and Gibson, JJ.